```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| CP PHILLY WEST, LLC | : | CIVIL ACTION |
| v. | : | |
| PARAGON WIRELESS GROUP, INC. | : | NO. 24-23 |

MEMORANDUM

Bartle, J.                                            September 12, 2024

Plaintiff CP Philly West, LLC ("CP Philly") has brought this action against defendant Paragon Wireless Group, Inc. ("Paragon"), seeking a declaration that a contract, dated January 31, 2023, between the two parties is unenforceable and that it has no contractual obligation to Paragon.  Thereafter, Paragon filed an answer and counterclaim against CP Philly.  In its counterclaim, it also sued Columbia Sussex Corporation ("CSC"), the parent company of CP Philly, which was not previously a party to the lawsuit.  Paragon includes two breach of contract claims.  The first involves a contract in effect until January 2023.  The second is the contract at issue in CP Philly's complaint.  While the counterclaim is not entirely clear or consistent, it appears that Paragon is asserting that both CP Philly and CSC are liable on the two contracts.

Before the court is the motion of CP Philly and CSC to dismiss[1] Paragon's breach of contract counterclaims (Counts I and II) for failure to state a claim (Doc. # 30).[2]

I

For present purposes, the Court must accept as true all well-pleaded facts in the counterclaim. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Court may also consider "exhibits attached to the [pleading] and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). When there is a document "integral to or explicitly relied upon" in the pleading it may also be considered as there is no concern of lack of notice to the counterclaim-plaintiff. See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1426 (3d Cir. 1993) (quotation marks omitted)).

---

1. This motion to dismiss also asserted lack of personal jurisdiction over CSC. That aspect of the motion was withdrawn on July 25, 2023 after a telephone conference with counsel (Doc. # 34).

2. Paragon also brings a claim of conversion against CP Philly West and CSC (Count III) and a claim of fraud against CSC (Count IV). The counterclaim-defendants have not moved to dismiss the latter two claims, and they are not the subject of this motion to dismiss.

The pleading must aver more than "labels and conclusions." Twombly, 550 U.S. 545. It must plead more than "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555) (internal quotations and alterations omitted). Instead, it must recite sufficient factual content to state a claim that is plausible on its face. Id. at 678.

II

According to the counterclaim, CSC owns CP Philly, which in turn owns the Marriott Philadelphia West in West Conshohocken, Pennsylvania. Paragon alleges that starting on or about September 2021, it managed CSC's wireless leases and general wireless business in exchange for a flat rate of $5,000 per month.[3] In January of 2023, Paragon avers that CSC and CP Philly fell behind on its payments and thereafter the parties negotiated a new contract dated January 31, 2023. At that time, Paragon maintains that they owed it approximately $25,000.

Scott Yung, Vice President of Operations at CSC, signed the new contract on behalf of CSC, which is identified as the landlord in the signature block. However, paragraph 1, entitled "parties and business terms," identifies CP Philly as

---

3. A copy of this contract is not currently before the court.

the "landlord" and lists the "landlord's notice address" as CSC in Crestview Hills, Kentucky. According to the terms of the contract, Paragon would rent the rooftop of the Marriott Philadelphia West and then obtain subleases on behalf of the landlord with wireless companies to place antennae and other electronic equipment on the Marriott's rooftop. Paragon was not obligated to pay a specific sum for the leased space. Instead, the contract provides that Paragon would collect the license fees from current and future rooftop subleases it provided and remit 75% of it to the landlord. Paragon would retain the remaining 25% as its compensation. Paragon alleges that on May 3, 2023, CSC terminated the January 31, 2023 contract and instructed Paragon to "halt performance."

In its counterclaim, Paragon seeks compensatory damages from CP Philly West and CSC under the terms of these two contracts.

### III

CSC and CP Philly argue that the January 31, 2023 contract is unenforceable because it lacks consideration and mutuality. A contract exists where there is mutuality of obligation, that is "when both parties to the contract are required to perform their respective promises. If a mutuality of promises is absent, the contract is unenforceable."

<u>Geisinger Clinic v. Di Cuccio</u>, 606 A.2d 509, 512 (Pa. Super Ct. 1992).

CP Philly and CSC first maintain that the January 31, 2023 contract is unenforceable because Paragon has no obligation to seek out leases for the Marriot Philadelphia West rooftop. Even if Paragon fails to secure any new subleases with wireless companies, it would still receive under the terms of the contract 25% of the license fees paid by any pre-existing sublessees.

Paragon, it is true, is not explicitly required to lift a finger to secure additional subleases for the rooftop of the Marriott Philadelphia West.  Nonetheless, an exclusive agency contract or contingency fee agreement such as this is nonetheless an enforceable contract.  There is an implied duty on the part of Paragon to use reasonable efforts to obtain subleases for the landlord.  Indeed, Paragon will be paid for new leases for the Marriott's rooftop only if it secures them. As Judge Cardozo wrote many years ago in the seminal decision of <u>Wood v. Lucy, Lady Duff-Gordon</u> involving a similar contract:

> It is true that he does not promise in so many words that he will use reasonable efforts to place the defendant's indorsements and market her designs.  We think, however, that such a promise is fairly to be implied.  The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal.  It takes a broader

> view today.  A promise may be lacking, and
> yet the whole writing may be "instinct with
> an obligation," imperfectly expressed . . .

118 N.E. 214, 214 (N.Y. 1917).  The Supreme Court of Pennsylvania has likewise held that exclusive distribution contracts are enforceable as they contain an implied duty to use reasonable efforts to raise revenue.  See, e.g., Maxwell v. Schaefer, 112 A.2d 69, 71-72 (Pa. 1955) (citing Wood, 118 N.E. at 214)); Huang v. BP Amoco Corp., 271 F.3d 560, 564-65 (3d Cir. 2001).

Next, CSC and CP Philly argue that the January 31, 2023 contract is unenforceable because Paragon has an unlimited right to terminate the contract while the right of CP Philly to terminate the contract is highly circumscribed.  Pennsylvania law does not "require both parties to an agreement to have equivalent obligations to satisfy the standard of mutuality of obligation."  Harris v. Green Tree Fin. Corp., 183 F.3d 173, 181 (3d Cir. 1999) (citing Greene v. Oliver Realty, Inc., 526 A.2d 1192, 1195 (Pa. 1987)).  Although one party's obligation may appear greater than the other, "each party bargained for what he wanted.  Modern contract law recognizes that, '[i]f the requirement of consideration is met, there is no additional requirement of . . . (b) equivalence in the values exchanged . . . .'"  Greene, 526 A.2d at 1195 (citing Restatement (Second) of Contracts § 79 (Am. L. Inst. 1981)).  CP

Philly and CSC's arguments that the January 31, 2023 contract lacks consideration and mutuality is without merit.

In addition, CSC and CP Philly argue that Paragon is not due $5,000 per month under the terms of the January 31, 2023 contract. Although this is true, Paragon has alleged that this $5,000 per month payment is an obligation stemming from the contract it had prior to the execution of the January 31, 2023 contract. Under the terms of that agreement, CSC was to pay $5,000 per month to manage CSC's telecommunications portfolio. This $5,000 fee allegedly owed to Paragon is an obligation distinct from the January 31, 2023 contract.

Separately, CSC argues that Counts I and II should be dismissed as to it because it signed the January 31, 2023 contract for the Marriot Philadelphia West as the disclosed principal for CP Philly and is not itself bound to the terms of the contract. The court at this stage must accept as true all well-pleaded facts including the wording of the January 31, 2023 contract itself, which is part of the record. Paragon avers that CSC was a party with which it contracted to lease the rooftop of the Marriott Philadelphia West. The contract itself, as noted above, lists "Columbia Sussex Corp" as the address for notice to the landlord and the signature block identifies the landlord as "Columbia Sussex Corporation, a Kentucky Corporation." Although the contract also identifies CP Philly

as the landlord, the court must take Paragon's allegations as true at this stage.  It has adequately pleaded that CSC is a party to the January 31, 2023 contract.

Accordingly, the motion of counterclaim-defendants CSC and CP Philly to dismiss Paragon's breach of contract counterclaims will be denied.